D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DR. GERALD FINKEL, as Chairman of the
Joint Industry Board of the Electrical
Industry,

**MEMORANDUM & ORDER**

**07-CV-2376 (NGG) (JO)**

Plaintiff,

-against-

HALL-MARK ELECTRICAL SUPPLIES
CORP., ZIZZA & COMPANY LTD., and
PRIMARY CAPITAL RESOURCES INC.,

Defendants.



------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Dr. Gerald Finkel brings this action against Defendants Hall-Mark Electrical Supplies Corp. ("Hall-Mark"), Zizza & Company Ltd. ("Zizza"), and Primary Capital Resources Inc. ("Primary Capital"). Plaintiff is an administrator and fiduciary of several benefit plans and alleges that Hall-Mark violated its obligations under a collective bargaining agreement and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. (See First Am. Compl. (Docket Entry # 5).) Plaintiff further alleges that Defendants Zizza and Primary Capital are jointly and severally liable for Hall-Mark's obligations. (See Second Am. Compl. (Docket Entry # 8).)

By Order dated March 18, 2009, this court granted Plaintiff default judgment and referred the case to Magistrate James Orenstein for a Report and Recommendation ("R&R") on damages. (Docket Entry #14).) Judge Orenstein issued an R&R on September 25, 2009. (Docket Entry # 18.) The parties did not object within the time to do so. On October 20, 2009, the court accepted

1

in part and rejected in part the R&R. The court held that Plaintiff was entitled to the entry of default judgment against all Defendants, and accepted the R&R's recommendation with regard to damages. (Docket Entry # 22.) The court entered judgment against (1) Defendant Hall-Mark, alone, in the amount of $62,996.01; and (2) all Defendants jointly and severally in the amount of $358,862.05. (Id.) Then, on October 22, 2010, Defendants filed notice of their Motion to Vacate Default Judgment (Docket Entry # 26), arguing that default judgment should be vacated because Plaintiff procured default through fraud. (See Defs.' Mem. in Supp. Mot. to Vacate Default J. ("Defs.' Mem.") (Docket Entry # 31).) Defendants' motion is denied for the reasons set forth below.

## I. BACKROUND

Nearly all material facts are uncontested. First, Plaintiff properly served all Defendants with either the Complaint (Docket Entry # 1), Amended Complaint (Docket Entry # 5), or Second Amended Complaint (Docket Entry # 8). Second, Defendants' then-attorney Deborah Hurlbert was aware of the filing of these complaints and was in contact with Plaintiff's counsel. (Pl.'s Decl. in Opp'n (Docket Entry # 32) at 1-2; Pl.'s Decl. Exs. A, B, C.) Third, Defendants' then-attorney Deborah Hurlbert, "advised plaintiff's counsel that she did not intend to answer the Second Amended Complaint." (Pl.'s Decl. in Opp'n at 2.) Fourth, until the entry of default judgment, Defendants never appeared and never defended the action in any way.

Defendants' motion to vacate default judgment is principally based upon the accusation that Plaintiff intentionally served court orders and motions relating to the entry of default judgment to "addresses that were known by Plaintiff's counsel to be outdated." (Defs.' Mem. at 1.) Defendants, however, fail to support this serious accusation with sufficient facts. Plaintiff's counsel aver that any court documents and motions relating to default judgment that required

2

service were mailed to Defendants' 60th Street address. (Pl.'s Decl. in Opp'n at 12.) Defendants' counsel state that Defendants moved from the 60th Street address to a different address in October of 2006, but "Defendants inadvertently failed to update their addresses with the Secretary of State of the State of New York." (Defs.' Decl. in Supp. (Docket Entry # 30) ¶ 6, 7.) Defendants argue, unconvincingly, that despite Defendants' failure to update their address with the Secretary of State, "proof positive of counsel for Plaintiffs' [sic] knowledge of the correct addresses—and that the service addresses were incorrect—is that, after the Default Judgment was entered, Plaintiff's counsel promptly served each of the Defendants with copies of the Default Judgment, together with restraining notices and information subpoenas, at correct addresses which it failed to use earlier." (Defs.' Mem. at 2.)

In arguing that Defendants did not have sufficient notice to be able to defend the action, Defendants focus almost entirely on the time period surrounding the entry of default judgment. They completely ignore the year-and-a-half period between the filing of the Complaint and the entry of default, during which Defendants failed to defend the action. Defendants point to several filings and court orders for which they claim they did not received notice. (Defs.' Mem. at 1.) But all of these orders and filings, except one, relate entirely to the entry of default and default judgment. (Id. at 1-2.)

The one order that deals with defending the merits of the action is Judge Orenstein's January 8, 2009 order directing the parties to take one of the three actions by February 9, 2009: "(a) the defendants must file an answer, (b) the parties must file a stipulation extending the defendants' time to answer, or (c) the plaintiff must file a motion for the entry of a notation of default." (Docket Entry # 11.) This order, however, did not create Defendant's obligation to appear, answer, move to dismiss, or otherwise defend the suit. The filing of the Complaint and

3

amended complaints created this obligation, and Defendants do not dispute that they were properly served with and were aware of the Complaint, the Amended Complaint, or the Second Amended Complaint.

Nor do Defendants represent that they had any intention to file an answer or a motion to dismiss with regard to any of these complaints. In fact, Plaintiff has provided the court emails between Plaintiff's attorneys and Defendants' then-attorney Deborah Hurlbert that discuss the pending action and demonstrate that Defendants were in fact aware of the law suit. (Pl.'s Decl. in Opp'n at 1-2, 4-6, 7-9, 9-10.) Furthermore, Plaintiff represents that Deborah Hurlbert "advised plaintiff's counsel that she did not intend to answer the Second Amended Complaint." (Id. at 2.) Thus, Defendants fail to provide any justification for why they failed to defend the action.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) permits litigants to petition the court to "set aside an entry of default for good cause, and . . . set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c); see also Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). The provisions of Rule 60(b) applicable here provide that the district court may grant a motion for relief from a default judgment on a showing of: "excusable neglect," Fed. R. Civ. P. 60(b)(1); "fraud . . . or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3); or for "any other reason justifying relief from the operation of the judgment," Fed. R. Civ. P. 60(b)(6).

Because there is a preference for resolving disputes on the merits, default judgment is "the most severe sanction which the court may apply." New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). Consequently, the court must resolve all doubts in favor of the party seeking to vacate, so as to ensure that disputes are resolved on the merits when possible. Id. On the

other hand, default procedures "provide a useful remedy when a litigant is confronted by an obstructionist adversary. Under such circumstances those procedural rules play a constructive role in maintaining the orderly and efficient administration of justice." Enron, 10 F.3d at 96. "The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) [and Rule 60(b)] are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron, 10 F.3d at 95.

In determining whether to vacate default judgment, the court considers principally three factors: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. See id. Courts may also consider equitable factors such as whether the entry of default would cause "a harsh or unfair result." Id. Although courts examine the same factors in ruling on motions to vacate an entry of default and a default judgment, "courts apply the factors more rigorously in the case of a default judgment, because the concepts of finality and litigation repose are more deeply implicated in the latter action." Id. (internal citations omitted).

### A. Willfulness

If a default is determined to be willful, that fact alone can justify denying a motion to vacate default judgment. See Action S.A. v. Marc Rich & Co., 951 F.2d 504, 507 (2d Cir. 1991) ("A default should not be set aside when it is found to be willful."); Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 60 (2d Cir. 1996) (noting that the Court of Appeals for the Second Circuit has "refused to vacate a judgment where the moving party had apparently made a strategic decision to default"); Angel v. Queens Blvd. Car Wash, No. 06-CV-6667 (CBA), 2008 WL 111159, at *3 (E.D.N.Y. Jan. 8, 2008) ("[A] default will not be vacated where the court

concludes that the defaulting party made a strategic decision to default."). Of the three factors "willfulness is preeminent, and a willful default will not normally be set aside. Consideration of the remaining criteria does not give rise to equities sufficient to outweigh the impact of defendants' willful conduct." S.E.C. v. Breed, No. 01-CV-7798 (CSH), 2004 WL 1824358, at *12 (S.D.N.Y. Aug. 13, 2004) (internal citations and quotations omitted).

In the context of a default, "willfulness" refers to conduct that is "more than merely negligent or careless." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). The Court of Appeals has found willfulness established where "the conduct of counsel or the litigant was egregious and was not satisfactorily explained." Id.

An attorney's conduct in defaulting is imputed to her clients. The Court of Appeals has explained that "allowing a party to evade the consequences of the acts or omissions of his freely selected agent would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." Id. Thus, "where the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit." Id. at 740. Defendants do not argue that, let alone make a showing why, their attorney's actions should not be imputed to them, and thus the court will follow the general rule and impute Defendants' attorney's actions to Defendants.

Defendants have offered no explanation for their failure to appear or defend the action. As set forth above, the record is plain: Defendants were aware of the existence of this action and Defendants *chose* not to appear. Though Defendants argue they did not receive notice of Judge Orenstein's January 8, 2009 Order directing Defendants to answer or Plaintiff to move for default judgment, they provide no justification for why they did not comply with their obligation

to defend the suit, which predated the January 8, 2009 order. Consequently, the record can support no conclusion but that Defendants willfully defaulted. This factor alone, under the circumstances of this case, justifies the denial of Defendants' motion to vacate default judgment.

### B. Meritorious Defense

To show a meritorious defense, a defendant must present evidence that would constitute a complete defense if proven at trial. See McNulty, 137 F.3d at 740. A defense is meritorious if "it is good at law so as to give the factfinder some determination to make." Am. Alliance, 92 F.3d at 61. Thus, to establish a meritorious defense, a defendant must assert facts and not merely "conclusory denials." Breed, 2004 WL 1824358, at *12 (internal quotations omitted).

Here, Defendants have failed provide any evidence of a defense. Rather Defendants' affidavit states only that,

> Hall-Mark did not have a fair and adequate opportunity to contest the amounts at issue in this action. In addition, neither Primary nor Zizza were provided with a fair and adequate opportunity to rebut Plaintiff's presumption that both Primary and Zizza [sic] and under a common control sufficient to hold them joint and severally liable for the obligations of Hall-Mark.

(Defs.' Decl. in Supp. ¶ 14.)

Defendants' affidavit does not present any evidence that could support the finding of a valid defense. Rather than asserting a defense, Defendants simply state a fact inherent in default judgment: that they did not have a full opportunity to litigate the matter or contest the amount of damages. Consequently, Defendants' assertions of defenses amount to nothing more than conclusory denials, which are insufficient to establish meritorious defenses. See New York v. Green, 420 F.3d 99, 109 (2d Cir. 2005). Thus, this factor further militates in favor of denying Defendants' motion to vacate default judgment.

7

## C. Prejudice

In order for a plaintiff to establish that prejudice would result if default judgment were vacated, "delay alone is not a sufficient basis for establishing prejudice. Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983). Plaintiff has asserted no prejudice here, so the court will not consider any for the purpose of this motion.

Nonetheless, "[a]n absence of prejudice to the nondefaulting party [does] not in itself entitle the defaulting party to relief from the judgment." McNulty, 137 F.3d at 738; see also Willis v. Landamerica Onestop, Inc., No. 07-CV-3646 (DC), 2009 WL 2474624, at *3 (S.D.N.Y. Aug. 13, 2009) ("[D]elay as the sole resulting prejudice to the non-defaulting party is not sufficient to militate against vacating a default judgment."). Rather, a district court "has discretion to deny the motion to vacate if it is persuaded that the default was willful and is unpersuaded that the defaulting party has a meritorious defense." McNulty, 137 F.3d at 738. Thus, the lack of prejudice here does not outweigh the court's finding that Defendants defaulted willfully and have shown no meritorious defense.

## D. Notice

Defendants also argue that the default judgment should be vacated because Plaintiff failed to provide them with the notice required by Federal Rule of Civil Procedure 55(b)(2). (Defs.' Mem. at 14.) Rule 55(b)(2) provides that, "If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." Fed. R. Civ. P.

8

55(b)(2). In order to determine whether the Rule 55(b)(2) notice requirement applies here, the court must resolve the issue of whether or not Defendants have appeared in this case.

The meaning of "appearance" for the purpose of the notice requirement in Rule 55(b)(2) is not resolved in this Circuit. See Green, 420 F.3d at 105-06. While the Court of Appeals for the Seventh Circuit requires a formal appearance, "the prevailing view is that the notice requirement contained in Rule 55(b)(2) applies not only to parties who have formally appeared, but also to those parties who, although delaying in a formal sense by failing to file pleadings within the twenty-day period, have otherwise indicated to the moving party a clear purpose to defend the suit." Green, 420 F.3d at 105 (internal quotation omitted). Thus, even assuming that the informal definition of "appearance" applies, a defendant must at least "express a clear intention to defend the suit" in order to trigger the notice requirement of Rule 55(b)(2). Id. at 106 (internal quotation omitted).

Defendants did not express any intention, let alone a clear intention, to defend. Plaintiff's attorney has represented that Defendants' then-attorney Deborah Hurlbert, "advised plaintiff's counsel that she did not intend to answer the Second Amended Complaint." (Docket Entry # 32 at 2.) Defendants have provided no evidence to the contrary. Thus, Defendants have not met even the informal definition of appearance, and thus Rule 55(b)(2) notice is not required. Consequently, Defendants' motion to vacate default judgment on the grounds that insufficient notice was provided is denied as meritless.

## III. CONCLUSION

For the reasons set forth above, Defendants' motion to vacate default judgment is DENIED. Defendants' motion to modify the judgment to exclude certain property (see Defs.' Mem. at 18-20) is DENIED as not yet ripe for review. This issue will be better presented for

consideration *if* Plaintiff seeks to execute against those assets in question and *once* Plaintiff has had the opportunity to conduct discovery related to execution against those assets.

SO ORDERED.                                                         s/Nicholas G. Garaufis

Dated: Brooklyn, New York                                    NICHOLAS G. GARAUFIS
      July 12, 2011                                          United States District Judge